FILED

July 25, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 10:36 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **Michael McDade,** | ) | **Docket No. 2016-06-0432** |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 25490-2016** |
| | ) | |
| **IGC Protection,** | ) | **Judge Joshua Davis Baker** |
| **Employer,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **AmTrust North America,** | ) | |
| **Insurance Carrier.** | ) | |

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

This matter came before the Court on July 5, 2016, on the Request for Expedited Hearing filed by the employee, Michael McDade, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is Mr. McDade's entitlement to temporary disability and medical benefits. The central legal issue is his likelihood of success in proving he suffered an injury in the course and scope of his employment that completely prevented him from working while he healed. The employer, IGC Protection, claimed the injury did not occur while he was working for IGC. It also claimed Mr. McDade's injury is idiopathic.[1] For the reasons set forth below, the Court finds Mr. McDade would likely succeed at a hearing on the merits in proving his injury occurred in the course and scope of his employment but would likely fail to prove the injury prevented him working. The Court therefore holds IGC must provide Mr. McDade further reasonable and necessary medical care for treatment of his injury.[2]

---

[1] IGC attached a long list of defenses to the dispute certification notice. The majority concerns permanent rather than temporary benefits.

[2] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

## Claim History

This case involves a shoulder injury from an unwitnessed fall. Mr. McDade worked for IGC in motor-vehicle traffic control. In addition to this job, Mr. McDade also worked for Ingram Barge Company. According to his Petition for Benefit Determination, on March 15, 2016, Mr. McDade fell on top of some poles inside an IGC box truck and dislocated his shoulder. No one witnessed the fall, but some coworkers saw him immediately after. The first report of injury stated, "EE was walking and tripped on flag stands causing unknown injury to unknown shoulder." (Ex. 3.)

Mr. McDade went to the emergency room and was diagnosed with an anterior left shoulder dislocation. (Ex. 1.) ER workers performed a shoulder reduction to return Mr. McDade's shoulder to the socket and then x-rayed it. The x-ray showed no fracture, and the hospital released him that same day.

Mr. McDade received follow-up care from Dr. James Rubright at Premier Orthopaedics & Sports Medicine. The patient intake information form Mr. McDade completed at the initial visit listed his employer as Ingram Barge and stated he worked as a chef. (Ex. 1 at 9.) Mr. McDade indicated on the form his injury resulted from an accident but left blank the section concerning whether the accident occurred on the job.

Dr. Rubright diagnosed Mr. McDade with left shoulder pain and recommended medication. He released Mr. McDade to return to work with restrictions that prohibited him from using his left arm. (Ex. 1 at 15.) Dr. Rubright also ordered an MRI. The MRI revealed a fracture, and Dr. Rubright recommended surgery to repair it. He noted Mr. McDade would likely be out of work for three to four months for surgery and recovery. (Ex. 1 at 19.) On April 27, 2016, the same day Dr. Rubright recommended surgery, IGC denied Mr. McDade's claim. The denial notice stated the "injury did not arise out of the course and scope of employment." (Ex. 4.)

After IGC denied his claim, Mr. McDade filed a Petition for Benefit Determination (PBD) seeking temporary disability and medical benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice (DCN). Mr. McDade filed a Request for Expedited Hearing and this Court set the matter for an evidentiary hearing.

At the hearing, with regard to the mechanism of injury, Mr. McDade testified that, on the morning of March 15, 2016, while en route to work, he spoke on the telephone to Jacob Austin, the owner of IGC, about retrieving car keys from the back of a box truck so that Mr. McDade could use a vehicle for work that day. He stated the keys hung from a hook or nail in the back of the box truck.

At approximately 6:20 a.m., while it was still dark outside, Mr. McDade entered

the box truck. He said the interior was dark, so he used his cell phone to light the area and search for the keys. After he retrieved the keys and turned to leave, Mr. McDade testified he tripped on some poles lying on the floor of the truck. He attempted to catch himself as he fell but was unable to do so. He heard a "snap" and experienced intense left shoulder pain. Mr. McDade exited the box truck, and his coworkers took him to the hospital where he received emergency treatment detailed in the medical records.

IGC questioned Mr. McDade about whether he tripped over the poles in the truck and fell or simply fell on top of them. Mr. McDade admitted he did not state he tripped in his affidavit or Petition for Benefit Determination. It is his testimony, however, that he tripped and fell. IGC also asked Mr. McDade why he failed to indicate his injury was work-related on the patient initial intake form at Dr. Rubright's office. Mr. McDade said he overlooked the question.

As for his post-injury ability to work, Mr. McDade testified he could not return to his job with Ingram following the March 15, 2016 accident because Ingram would not allow him to resume working on a boat due to the condition of his arm. He, however, admitted no doctor took him off work completely following his injury and stated he returned to work for IGC on a couple of occasions. He testified he could not do his work at IGC to full capacity because of his pain medication, but admitted IGC allowed him to work within the restrictions that prohibited use of his left arm. Text messages between Mr. McDade and Mr. Austin showed Mr. Austin offered him work.

Mr. McDade further testified, despite being released to return to work with restrictions, he could not work while taking pain medication because his head was "in a fog." He also stated he could do few things at work, such as lifting cones or signs, and testified he essentially served as a "warm body" on the worksite.

Mr. McDade argued his claim is work-related because the accident occurred while retrieving keys inside the box truck in the course of his employment for IGC. He claimed he mistakenly listed Ingram as his employer because he believed he had to use his private insurance to get treatment.

IGC argued Mr. McDade's injury did not occur during his employment for IGC. Instead, it claimed the injury occurred during his work for Ingram. It further argued that, even if the injury occurred in the course and scope of his work for IGC, the injury is idiopathic because Mr. McDade did not trip on the poles in the truck but simply fell on top of them. IGC claims the distinction is important as Mr. McDade presented no proof that falling on top of the poles was more injurious than simply falling on the ground. Finally, IGC argued Mr. McDade failed to prove his injury prevented him working, so he cannot recover temporary disability benefits.

**Findings of Fact and Conclusions of Law**

In order to grant the relief Mr. McDade seeks, the Court must apply the following legal principles. Mr. McDade bears the burden of proof on all elements of his workers' compensation claim. Tenn. Code Ann. § 50-6-239(c)(6) (2015); *see also Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). He need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7- 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, Mr. McDade has the burden to come forward with sufficient evidence from which this Court can determine he is likely to prevail at a hearing on the merits. *Id.* As further explained below, the Court finds Mr. McDade carried his burden of proof with regard to causation and is therefore entitled to medical benefits for his workplace injury. He cannot, however, recover temporary disability benefits at this time.

I.     **Mr. McDade is entitled to continued medical treatment with Dr. Rubright and payment of all reasonable and necessary medical treatment previously provided.**

The Court considers the following statutory definitions in order to reach its conclusions. The Workers' Compensation Law defines an "injury" as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes . . . the need for medical treatment." Tenn. Code Ann. § 50-6-102(14) (2015). Further, an injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment[.] Tenn. Code Ann. § 50-6-102(14)(A) (2015). Arising out of employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). "An injury occurs in the course of employment if 'it takes place within the period of the employment, at a place where the employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto.'" *Hubble v. Dyer Nursing Home*, 188 S.W.3d 525, 534 (Tenn. 2006) (citing *Blankenship v. Am. Ordnance Sys., LLC*, 164 S.W.3d 350, 354 (Tenn. 2005)).

Here, Mr. McDade credibly testified he entered the dark box truck to search for an automobile key. While in the truck, he testified he tripped over poles lying on the floor, fell, and hurt his shoulder. IGC provided no compelling proof controverting his testimony.

However, IGC did offer a defense to the claim. IGC questioned Mr. McDade concerning whether he tripped over the poles or fell on top of them and argued that this

4

distinction might result in his claim being deemed idiopathic under *Byrom v. Randstad N. Am., L.P.*, No. M2011-3057-WC-R3-WC, 2012 Tenn. LEXIS 152 (Tenn. Workers' Comp. Panel Mar. 8, 2012).

In the *Byrom* case, which also involved a workplace fall, the Panel found the facts were insufficient to establish a work-related hazard caused the fall. In *Byrom*, no one witnessed the accident and the employee could not remember what happened. The employer's office manager inspected the area and found no workplace hazards. Under these circumstances, the Panel determined that, while it was entirely possible a work-related hazard caused employee to fall, the employee failed to carry his burden of proving the claim. *Id.* at 17.

Here, Mr. McDade testified he tripped over the poles and fell, unlike the employee in *Byrom* who provided no concrete proof of the mechanism of injury. IGC provided no countervailing testimony, and the Court finds Mr. McDade's testimony credible despite IGC's claims of inconsistency in his written statements. Accordingly, the Court finds IGC's idiopathic defense unpersuasive.

IGC also cited lack of medical causation as a defense. Thus, the court must examine the statutory authority regarding medical causation. "An injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015). Shown to a reasonable degree of medical certainty means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility. Tenn. Code Ann. § 50-6-102(14)(D) (2015). Thus, causation must be established by expert medical testimony, and an employee's lay testimony, without corroborative expert testimony, does not constitute adequate evidence of medical causation. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *12 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

However, at an expedited hearing, an employee need not establish medical causation by a preponderance of the evidence. *See Lewis v. Molly Maid, et al.,* No. 2015-06-0456, 2016 TN Wrk. Comp. App. Bd. LEXIS 19, at *8-9 (Tenn. Workers' Comp. App. Bd. Apr. 20, 2016). Rather, if the employee comes forward with sufficient evidence to support that a work event resulted in injury, it may be sufficient to support an order compelling an employer to provide a panel. *Id.* For this reason, IGC's argument regarding medical causation at this stage of the proceedings is premature.

So, the Court holds IGC must provide Mr. McDade continuing reasonable and necessary medical treatment with Dr. Rubright, whom the Court approves as the authorized treating physician. *See Young v. Young Electric Co., et al.*, No. 2015-06-0860 2016 Tn. Wrk Comp. App. Bd. LEXIS 24, at *18-19 (Workers' Comp. App. Bd. May 25, 2016) (Employee who established a relationship with a treating physician before the

employer offered medical care, despite notice of the injury, had the right to continue treating with that physician.).  Additionally, the Court holds IGC must pay the costs of all reasonable and necessary medical care Mr. McDade underwent following the injury.  *See id*. at *16-18.

## II.     Mr. McDade's claim for temporary disability benefits is denied at this time.

Mr. McDade additionally seeks temporary disability benefits.  In *Jones v. Crencor Leasing and Sales,* No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015), the Appeals Board held:

> An injured worker is eligible for temporary disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978).

Until these criteria are established, the Court is unable to grant such benefits.

Here, Mr. McDade admitted no physician took him completely off from work.  He also admitted IGC offered him accommodated work.  He, however, turned down the work because he felt he could not perform it while on pain medication.  Mr. McDade's subjective belief is insufficient to show an inability to work in light of his release to return to restricted duty.  Because no physician took him completely off from work and IGC attempted to accommodate his condition, Mr. McDade failed to demonstrate any period of disability for which benefits are recoverable.  The Court, therefore, denies his request for temporary disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Medical care for Mr. McDade's injuries shall be paid, and Dr. James Rubright shall serve as the authorized treating physician.  Medical bills shall be furnished to IGC or its workers' compensation carrier by Mr. McDade or the medical providers.

2. IGC shall also pay the cost of any reasonable and necessary medical care Mr. McDade underwent following the accident.

3. Mr. McDade's claim for temporary disability benefits is denied at this time.

4. This matter is set for an Initial (Scheduling) Hearing on August 29, 2016, at 8:00 a.m. (CDT).

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance

6

with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

6. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.

**ENTERED THIS THE 25ᵗʰ DAY OF JULY, 2016.**

_____

**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial (Scheduling) Hearing has been sent for **August 29, 2016, at 8:00 a.m. (CDT). You must call 615-741-2113 or toll free at 855-874-0474 to participate in the Initial Hearing.**

**Please Note:   You must call in on the scheduled date/time to  participate.  Failure to call in may result in a determination of the issues without your further participation.  All conferences are set using Central Time (CT).**


Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board.  To file a Notice of Appeal, you must:

1.  Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2.  File the completed form with the Court Clerk within seven business days of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3.  Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4.  The appealing party is responsible for payment of a filing fee in the amount of $75.000.  Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment.  Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service.  In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee.  The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter.  The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable.  **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5.  The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal.  Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing

Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:

1. Medical Records of Michael McDade
2. Affidavit of Michael McDade
3. First Report of Injury
4. Notice of Claim Denial
5. Child Support Arrearage Information

Technical record:[3]

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing

---

[3] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on this the 25th day of July, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| Michael McDade | X | | | | X | 1108 Cardinal Lane, Hendersonville, TN 37075 |
| Fred Baker, Attorney | | | | | X | fbaker@wimberlylawson.com |

_____
Penny Shrum, Court Clerk
Wc.courtclerk@tn.gov